Filed 4/25/14  Webb v. Hadzicki CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| BARRY M. WEBB,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>DAVID HADZICKI et al.,<br><br>　　　Defendants and Respondents. | D064245<br><br><br>(Super. Ct. No.<br>　37-2012-00093982-CU-BT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.

Barry M. Webb, in pro. per, for Plaintiff and Appellant.

David Hadzicki, in pro. per; Andrew J. Kessler for Defendant and Respondent David Hadzicki.

Keesal Young & Logan Audette Paul Morales and Kristy A. Hewitt for Defendants and Respondents Morgan Stanley Smith Barney Global Impact Funding Trust and Drew Cunningham.

## INTRODUCTION

Barry M. Webb filed a first amended complaint against defendants David Hadzicki, Drew Cunningham, Morgan Stanley Smith Barney Global Impact Funding Trust (erroneously sued as Morgan Stanley Smith Barney Global Funding Trust, Inc.) (Morgan Stanley), D & D Delta Fund, L.P. (Delta Fund), and D and D Capital Group, LLC (Capital Group).  The first amended complaint contained three causes of action against each of the defendants: breach of contract, breach of fiduciary duty, and fraud. All of the claims were premised on an alleged written contract between "Webb and defendants David Hadzicki and Drew Cunningham."  Webb attached several documents to the complaint, including Delta Fund's private placement offering of limited partnership interests and a subscription agreement that Webb executed to purchase limited partnership interests in Delta Fund.[1]

Hadzicki, Cunningham, and Morgan Stanley (respondents) each demurred to the first amended complaint.[2]  In their demurrers, respondents argued that each of Webb's causes of action was premised upon an alleged agreement between Webb and respondents, and that Webb had failed to attach a copy of the alleged agreement to the first amended complaint, as is required.  Each respondent further argued that it was not a party to any of the documents that Webb attached to his first amended complaint.  The

---

[1]     Webb attached these documents to his complaint as an exhibit labeled, "A copy of the contract."

[2]     Delta Fund and Capital Group did not demurrer.

trial court sustained the demurrers without leave to amend, and entered judgment in favor of respondents.

On appeal, Webb claims that the trial court abused its discretion in denying him leave to amend the first amended complaint because he had a pending motion to compel discovery that would have "determin[ed] the roles and agency relationships or joint venture relationships [of the defendants] to each other." Webb also contends that the trial court's ruling sustaining the demurrers without leave to amend violated his right to a jury trial. We affirm the judgment.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The original complaint and the trial court's ruling sustaining Hadzicki's demurrer with leave to amend*

Webb filed the original complaint in this action against defendants in March 2012.[3] Respondents each filed a demurrer to the complaint.

In July 2012, the trial court sustained Hadzicki's demurrer. The court ruled:

> "All three causes of action of [Webb's] complaint are predicated on an alleged agreement between the parties. However, the contract is not attached to the complaint nor are its terms pled verbatim. *Harris v. Rudin, Richman & Appel,* (1999) 74 Cal.App.4th 299, 307 [(*Harris*)]."

---

[3] Although the summons to the original complaint is in the record, the complaint is not.

3

The trial court granted Webb 20 days "for [Webb] to plead verbatim the terms of the purported contract between the parties or attach a copy of the contract to the complaint."

B.    *The first amended complaint*

In August 2012, Webb filed the first amended complaint, which contained causes of action for breach of contract, breach of fiduciary duty, and fraud against each of the defendants.

In his breach of contract cause of action, Webb alleged, "On or about May 30, 2007 a written contract was entered into by Barry M. Webb and Defendants David Hadzicki and Drew Cunningham who were acting in their own behalf and on behalf of all the other Co-Defendants . . . ."  Webb further alleged that he tendered $50,000 to Cunningham and Hadzicki pursuant to the contract, to be invested on his behalf.  Webb claimed that defendants breached the contract by failing to provide accountings specified in the contract and by failing to invest prudently.  Webb alleged that he suffered financial damages as a result of these breaches.

In his breach of fiduciary duty cause of action, Webb incorporated his breach of contract allegations and claimed that the defendants had breached fiduciary duties owed to Webb by "not wisely invest[ing] [Webb's] funds," and "fail[ing] to account as the agreement required."

In his fraud cause of action, Webb incorporated his breach of contract allegations and further alleged:

4

"Webb was promised that his money would be invested prudently as provided by the written contract of investment, [Webb] was justified in his reliance upon such promises in the fiduciary investment contract that the money he invested would be timely accounted and invested in a proper fashion, had he known that the trust he placed in Defendants would be breached and that the Defendants would not, as promised, account and invest prudently the funds he tendered, he never would have[,] in justified reliance upon the assurances of the Defendants[,] entered into the contract and have invested any sums with them."

C.     *Webb's motion to compel*

In September 2012, Webb filed a motion to compel discovery responses as to Hadzicki. Hadzicki opposed the motion and Webb filed a reply.

D.     *Respondents' demurrers to the first amended complaint*

Shortly thereafter, respondents each filed a demurrer to the first amended complaint. The principal contention of the demurrers was that "each of [Webb's] causes of action fails as each is based upon the existence of an alleged agreement between [Webb] and [respondents] and the first amended complaint neither provides the verbatim material terms nor a copy of any such agreement."

Webb opposed the demurrers. In his opposition, Webb contended that he had attached a "written copy of the contract" to the first amended complaint. Webb further maintained that a "joint venture is properly alleged," and argued, "On page three of the [first amended complaint] in paragraph 6 [Webb] alleges the Defendants and each of them engaged in a joint venture to induce [Webb] to invest money and tender money to them that [Webb] did tender to them."

5

E.     *The trial court's ruling on respondents' demurrers and on Webb's motion to compel*

After respondents filed replies, the trial court issued a tentative ruling sustaining respondents' demurrers without leave to amend and denying Webb's motion to compel as moot.  A few days later, the trial court held a hearing on the demurrers.  At the hearing, the trial court stated that Webb had failed to attach a contract to the first amended complaint that would demonstrate any potential liability on the part of respondents on the claims alleged in the first amended complaint.

Webb responded that he would "be able to show . . . in trial that these individuals were conspiring together."  Webb also noted that he had a pending motion to compel discovery and that "[d]iscovery is still ongoing," and alleged that "[t]hey won't turn over records."

The trial court responded in part:

> "This is the second time that we've had the chance to look at this. The contract that you produced does not in any way implicate these folks to be parties to the contract.  That doesn't mean that the party you contracted with isn't still involved, but these folks are not, and this is the second time for it, and I'm satisfied with the tentative, sir. So with respect to your motion to compel, it's off calendar . . . ."

That same day, the trial court issued a ruling sustaining the demurrers without leave to amend and denying Webb's motion to compel as moot.  The court's order states in relevant part:

> "All demurrers are sustained.
>
> "When this Court sustained David Hadzicki's demurrer to the original complaint it noted that all three causes of the complaint were predicated on an alleged agreement between the parties but that

6

the contract was not attached to the complaint nor were its terms pled verbatim. [Webb] was given leave to amend to plead verbatim the terms of the purported contract between the parties or attach a copy of the contract to the complaint. Thereafter, [Webb] filed his [first amended complaint] attaching certain documents thereto.

"In opposing the demurrers to the [first amended complaint], [Webb] argues that 'a copy of the contract is attached to the complaint.' Although documents are attached to the [first amended complaint], no contract between [Webb] and the demurring Defendants was attached.

"Because all three causes of action are based on the allegation that there was a written contract between the parties and because [Webb] has failed to attach a contract between these parties or plead a contract's terms verbatim, all causes of action fail.

"Additionally, the second cause of action for breach of fiduciary duty fails because [Webb] has not alleged that any of the demurring defendants owed him a duty.

"The [demurrer to the] third cause of action for fraud is also sustained because the cause of action is not pled with the specificity required for a fraud cause of action.

"The Court previously afforded [Webb] the opportunity to amend his complaint and pointed out the defects with the original complaint. Having failed to cure those defects with the [first amended complaint] and having offered no facts that could be pled to cure the defects, the demurrer is sustained without leave to amend.

"Based on the ruling on the demurrer, [Webb's] motion to compel is off calendar as moot."

7

F.      *The judgment and appeal*

The court entered a judgment in favor of respondents.[4] Webb timely appealed from the judgment.

## III.

## DISCUSSION

A.      *The trial court did not abuse its discretion in denying Webb leave to amend the first amended complaint*

Webb contends that the trial court "abuse[d] its discretion by not allowing leave to amend the complaint while discovery was subject to a motion to compel."

1.      *Governing law and standard of review*

Where a demurrer is "sustained without leave to amend, [the reviewing court] decide[s] whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318, italics added.)

---

[4]     The court's judgment is clear that it is in favor of respondents only. Delta Fund and Capital Group are not parties to the judgment.

8

2.      *Application*

        a.      *Webb's contentions on appeal*

On appeal, Webb does not contend that the first amended complaint adequately stated a cause of action against respondents.[5]  Although it is not entirely clear from his brief, Webb appears to argue that he could amend the first amended complaint to sufficiently allege causes of action based on the private placement memorandum and the subscription agreement offered by Delta Fund, on the theory that respondents were the agents of Delta Fund or engaged in a joint venture with Delta Fund.[6]  The entirety of Webb's argument with respect to this issue is as follows:

> "Several Defendants were acting as agents of each other and discovery was attempted to determine the roles and agency relationships or joint venture relationships to each other.  Discovery was not forthcoming and a motion to compel was pending when the trial judge did not allow a motion to compel to be heard or allow leave to amend the complaint."

---

[5]      As the trial court correctly stated in both its ruling sustaining Hadzicki's demurrer to the original complaint and its ruling sustaining respondents' demurrers to the first amended complaint, "If [an] action is based on alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written agreement must be attached and incorporated by reference.  [Citation.]"  (*Harris, supra,* 74 Cal.App.4th at p. 307.)  Respondents are not parties to the private placement offering or the subscription agreement that Webb attached as "a copy of the contract" to the first amended complaint.

[6]      Webb does not appear to contend that there was some other contract between the parties that exists.

9

b.      *Webb has not shown a reasonable possibility that he could adequately allege a claim against respondents as agents of Delta Fund*

With respect to respondents' potential liability as agents of Delta Fund, "an agent for a disclosed principal to a contract is not liable on the contract itself or on a claim that necessarily arises from the contract."  (*Freedman v. Brutzkus* (2010) 182 Cal.App.4th 1065, 1071.)  In this case, both the private placement memorandum and the subscription agreement indicate on their faces that they are offered by Delta Fund.  None of the respondents signed either document.  Further, even if respondents had signed the private placement memorandum and/or the subscription agreement as agents of Delta Fund, they would not be liable for claims arising from those documents since the documents on their face indicate that they are offered by Delta Fund.  (See, e.g., *Ronay Family Limited Partnership v. Tweed* (2013) 216 Cal.App.4th 830, 837 ["Since it is apparent from the face of the account agreement that Tweed signed as the agent of CapWest, he is not a party to the agreement with rights and obligations thereunder"]; *Filippo Industries, Inc. v. Sun Ins. Co.* (1999) 74 Cal.App.4th 1429, 1442-1443 [agent that contracts for disclosed principal is not a party to contract].)  In short, even assuming that Webb could adequately allege that one or more of the respondents was an agent of Delta Fund, such allegations would provide no basis for holding respondents liable for claims premised on the private placement memorandum and/or the subscription agreement.

10

c.      *Webb has not shown a reasonable possibility that he could adequately allege a claim against respondents as members of a joint venture with Delta Fund*

With respect to respondents' potential liability as members of a joint venture, the court in *Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 370, summarized the law governing joint ventures as follows:

> " 'A joint venture . . . is an undertaking by two or more persons jointly to carry out a single business enterprise for profit.' [Citation.] 'There are three basic elements of a joint venture: the members must have joint control over the venture (even though they may delegate it), they must share the profits of the undertaking, and the members must each have an ownership interest in the enterprise. [Citation.]' [Citation.]"

Webb's first amended complaint included vague allegations that defendants shared control over, and profits from, an "investment scheme." Webb alleged, "Each named Defendant acted in concert to pool and marshall all their efforts in the below investment scheme to produce a financial gain and to work in concert for such purpose, they all acted in concert to produce a profit in regard to take [*sic*] the money invested by [Webb] to produce a financial gain and to share such effort and profit from such joint conduct as a joint venture . . . ." However, apart from this essentially boilerplate allegation, Webb did not allege any *facts* supporting his assertion that all defendants shared control and profits over a joint venture in his first amended complaint. (See *Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031 ["plaintiff has the burden of showing that the *facts* pleaded are sufficient to establish every element of the cause of action" (italics added)]; *Requa v. Regents of University of California* (2012) 213 Cal.App.4th 213, 216 [" 'In ruling on . . . [a] demurrer, the trial court ha[s] to accept as

11

true all material *facts* properly pleaded . . . disregarding . . . conclusions of law' [citation]" (italics added)]; compare with *Unruh-Haxton v. Regents of University of California*, *supra*, 162 Cal.App.4th at pp. 370-371 [complaint adequately alleged "*facts* supporting creation of a joint venture," where complaint alleged facts that defendants entered into a "written joint venture agreement" to finance and operate a fertility clinic and to earn profits based on ownership interests in the joint venture].)

Further, the first amended complaint did not allege that respondents all had "an ownership interest in the enterprise" with which Webb contracted. (*Unruh-Haxton v. Regents of University of California*, *supra*, 162 Cal.App.4th at p. 370.) In addition, Webb failed to demonstrate, in either the trial court or in this court, how additional discovery might permit him to adequately allege a joint venture relationship pursuant to which respondents might be found legally liable to him. (See *In re Social Services Payment Cases* (2008) 166 Cal.App.4th 1249, 1274 [party seeking leave to amend a complaint "must show in what manner [he] can amend [his] complaint and how that amendment will change the legal effect of [his] pleading"].)

Under these circumstances, we conclude that the trial court did not abuse its discretion in sustaining respondents' demurrer to the first amended complaint.

12

B.      *The trial court did not violate Webb's right to a jury trial*

Webb contends that the trial court violated his right to a jury trial by sustaining the demurrer without leave to amend while he had a motion to compel discovery pending before the court.

Article 1, section 16 of the California Constitution provides in relevant part: "Trial by jury is an inviolate right and shall be secured to all."

"[T]he right to trial by jury pertains solely to questions of fact." (*Dixon v. Superior Court* (1994) 30 Cal.App.4th 733, 746; see also *Roos v. Red* (2005) 130 Cal.App.4th 870, 885, fn. 17 (*Roos*) ["in absence of triable question of fact, no right to a jury trial exists"]; *People v. Loomis* (1938) 27 Cal.App.2d 236, 239 [right to jury trial applies "where an issue of fact is raised by the pleadings"].)  A demurrer raises an issue of law as to the legal sufficiency of the pleading and therefore presents an issue of law for the court, not a question of fact for the jury.  (See *Kurlan v. Columbia Broadcasting System, Inc.* (1953) 40 Cal.2d 799, 806-807; *Palmer v. Metro-Goldwyn-Mayer Pictures* (1953) 119 Cal.App.2d 456, 460 (*Palmer*).)  In a case in which a plaintiff has failed to state a legally sufficient cause of action, the sustaining of a demurrer without leave to amend does not deprive a plaintiff of the constitutional right of trial by jury.  (*Palmer, supra,* at p. 460.)

We concluded in part III.A., *ante*, that the trial court did not abuse its discretion in sustaining respondents' demurrers without leave to amend, notwithstanding the existence of the pending motion to compel.  Further, in sustaining the demurrer, the trial court ruled that the first amended complaint was legally insufficient.  Webb's complaint did not

present a question of fact for a jury, and the trial court thus did violate Webb's right to a jury trial by sustaining the demurrer. (See *Palmer*, *supra*, 119 Cal.App.2d at p. 460; *Roos, supra*, 130 Cal.App.4th at p. 870.)

## IV.

## DISPOSITION

The judgment is affirmed. Webb is to bear costs on appeal.


                           AARON, J.

WE CONCUR:


    BENKE, Acting P. J.


      IRION, J.

14